1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| D'EWART REPRESENTATIVES, L.L.C.,<br><br>Plaintiff,<br><br>v.<br><br>SEDIVER USA, INC.,<br><br>Defendant. | Case No.: 2:22-cv-802<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff D'EWART REPRESENTATIVES, L.L.C., by and through its undersigned counsel, hereby complains against Defendant SEDIVER USA, Inc. as follows:

### PARTIES, JURISDICTION AND VENUE

1.      Plaintiff, D'EWART REPRESENTATIVES, L.L.C. ("D'EWART"), is a limited liability company organized under the laws of Washington.   D'EWART has the following members: Douglas D'Ewart and Peter D'Ewart, both of which are citizens of Washington. D'EWART is an independent sales representative agency engaged in marketing and soliciting orders and sales of products of the various manufacturers it represents.

2.      Defendant SEDIVER, USA, Inc. ("SEDIVER") is a corporation organized under the laws of Delaware with its principal place of business in West Memphis, Arkansas. SEDIVER is a manufacturer and supplier of various toughened, glass and other insulators for use

COMPLAINT
(No. Case No.:) –1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

157065389.2

on overhead transmission and distribution lines. SEDIVER utilized independent sales representatives, such as D'EWART, to market and solicit orders for the sale of its products.

3.      The amount in controversy in this matter, exclusive of interest and costs, exceeds $75,000.00, and D'EWART and SEDIVER are citizens of different states.  Accordingly, this Court has subject-matter jurisdiction over this cause pursuant to 28 U.S.C. § 1332.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events or omissions giving rise to this action occurred in this District.

## **FACTS**

5.      For over 15 years, D'EWART served as an independent sales representative for SEDIVER, pursuant to a series of contracts, the latest of which is an "Agency Agreement" dated as of August 8, 2019 (the "Agreement").  A true and accurate copy of the Agreement is attached hereto as **Exhibit A**.

6.      Under the terms of the Agreement, SEDIVER appointed D'Ewart as its exclusive independent sales representative in an assigned territory consisting of the States of Alaska, Idaho, Oregon, Washington, Utah, and Wyoming, except for the Wyoming counties of Albany, Laramie, Goshen, Platte, Carbon, Converse & Niobrara, and Natrona, and excluding Western Area Power business in Wyoming. (Ex. A, Agreement at § 1.1, Schedule A.1, referred to therein and herein as the "Territory").  SEDIVER agreed to pay D'EWART a commission based on a percentage of sales as set forth in the Schedule A3 to the Agreement. (Id. at § 6, Schedule A3).

7.      SEDIVER sought out D'EWART and entered into the Agreement with D'EWART to take advantage of D'EWART's highly-qualified sales and marketing personnel, extensive experience, expertise, and reputation in the industry and in the assigned Territory, and to benefit from D'EWART's experience and network of customers and prospective customers.

COMPLAINT
(No. Case No.:) –2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

157065389.2

8.      Throughout its tenure as an independent sales representative for SEDIVER, D'EWART invested its professional experience and resources in developing customers and business opportunities for SEDIVER in its assigned Territory, which have been and will continue to generate sales and revenue for SEDIVER for years to come.

9.      Because of the nature of SEDIVER's products and the projects for which they are purchased, the sales process often takes long periods of time to complete, from initial solicitation to delivery of product.

10.     D'EWART was responsible for procuring numerous orders and sales opportunities for SEDIVER's products, many of which already are in production and fulfillment or the subject of pending quotes and proposals which were made to customers called on by D'EWART.

11.     Despite the successful results of D'EWART's efforts, in a letter dated January 28, 2022 (the "Termination Letter"), SEDIVER notified D'EWART that SEDIVER was terminating the Agreement pursuant to Section 10.1, effective February 28, 2022. A true and accurate copy of the Termination Letter is attached hereto as **Exhibit B**.

12.     In the Termination Letter, SEDIVER stated that "[o]utstanding commissions due in relation to previous and/or current projects will be paid in accordance with the agreement terms where proof of services can be demonstrated." (Id.)  The Termination Letter further stated that "[i]n particular, with regards to commission related to the ongoing EPC contracted Gateway-South project, [D'Ewart] shall be entitled to receive a commission equal to one (1) percent of the customer net purchase order value upon completion of the supply and payment-in-full received by [SEDIVER] from the customer." (Id.)

COMPLAINT
(No. Case No.:) –3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

157065389.2

13.    SEDIVER's statements in the Termination Letter regarding its obligations to pay post-termination commissions are contrary to the Agreement and applicable law.

14.    First, nothing in the Agreement requires that D'EWART present proof of its services in order to receive commissions due for prior or current projects.  Further, even if that were a condition, SEDIVER is well aware of D'EWART's high level of performance in connection with all such sales.

15.    Second, the Termination Letter erroneously states that the commission percentage is 1%.  To the contrary, the Agreement expressly provides that the commission rate is either 4.5%, or 3.5% for "single project sales greater than $1,000,000 and annual blanket contract sales greater than $2,500,000." (Ex. A, Agreement, Schedule A.3.1).

16.    Moreover, in recognition of the long sales process from solicitation to production to delivery, the Agreement also provides that following termination, D'EWART will be paid its "full agreed commission for shipments as they are made against unfilled orders or unexpired, firm commitments which have been accepted by the Company, for a period not to exceed thirty (30) days or the expiration date of the commitment, whichever shall occur first."  (Id. at § 10.3).

17.    In the Termination Letter SEDIVER failed to provide any reason or explanation for its decision to terminate the Agreement.  It could not have been based on the level of D'EWART's performance, as there were and are significant on-going and pending sales to customers in D'EWART's now former Territory which were procured by D'EWART, for which D'EWART is entitled to its full commissions.

18.    Under the terms of the Agreement, SEDIVER is obligated to pay commissions to D'EWART for shipments as they are made against all unfilled orders or unexpired, firm

COMPLAINT
(No. Case No.:) –4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

157065389.2

commitments accepted by SEDIVER on or before March 30, 2022, *i.e.*, within thirty (30) days of the effective date of termination. (Id.)

19.     SEDIVER has failed to pay D'EWART commissions that are due and owing under the Agreement, which amounts remain due and owing. SEDIVER also has stated that it will not pay all commissions that are or will become due D'EWART under the terms of the Agreement.

## COUNT I
### (Breach of Contract)

20.     As Paragraph 20 of this Count I, D'EWART adopts and incorporates Paragraphs 1 thru 19 of this Complaint as though fully set forth herein.

21.     D'EWART substantially performed its material obligations consistent with the parties' Agreement, and successfully generated significant business, orders, commitments, sales and profits for SEDIVER by promoting the sales of its products.

22.     Under the terms of the Agreement, SEDIVER is obligated to pay commissions to D'EWART for shipments as they are made against all unfilled orders or unexpired, firm commitments accepted by SEDIVER on or before March 30, 2022, *i.e.*, within thirty (30) days of the effective date of termination. (Id.)

23.     SEDIVER has failed and refused to pay D'Ewart all commissions due under the Agreement.

24.     SEDIVER has also underpaid D'Ewart commissions at a reduced commission rate of 1%.

25.     SEDIVER's failure to pay D'Ewart all commissions in full constitutes a breach of the Agreement.

COMPLAINT
(No. Case No.:) –5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

157065389.2

26.     Additionally, the Agreement included an implied covenant of good faith and fair dealing that required SEDIVER to exercise its discretion under the Agreement reasonably and with a proper motive, and not arbitrarily, capriciously, or in a manner inconsistent with the parties' reasonable expectations.

27.     Yet, SEDIVER's decision to terminate the Agreement effective February 28, 2022, was made in bad faith for the intended purpose of avoiding its obligation to pay D'EWART for commissions that were due or to become due based on sales procured by D'EWART's efforts.

28.     SEDIVER's stated position regarding D'EWART's entitlement to post-termination commissions was contrary to the Agreement and applicable law, and was a pretext concocted in bad faith by SEDIVER in an attempt to avoid its obligation to pay commissions due or to become due to SEDIVER.

29.     SEDIVER's opportunistic termination of the Agreement was unreasonable, without a proper motive, and contrary to D'EWART's reasonable expectation that it would be compensated.

30.     SEDIVER breached the Agreement by terminating it in bad faith in violation of its implied duty of good faith and fair dealing.

31.     As a direct result of SEDIVER's breaches, D'EWART has incurred and will continue to incur significant damages, including but not limited to, unpaid and underpaid commissions.

32.     The precise amount of commissions due and owing D'EWART by SEDIVER cannot be computed without discovery.  SEDIVER, not D'EWART, is in possession of the

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

157065389.2

documents and information necessary to determine the exact amount of unpaid commissions. Such commissions due and owing, however, are in excess of $75,000.

WHEREFORE, Plaintiff, D'EWART REPRESENTATIVES, L.L.C., respectfully requests the entry of judgment in its favor and against Defendant, SEDIVER USA, Inc., in such amount as proven at trial, which amount is in excess of $75,000.00, plus costs, expenses, and for such other relief as this Court deems just and equitable.

**COUNT II**
**Violation of Revised Code of Washington**
**(RCW 49.48.150 *et. seq.*)**

33.     As Paragraph 33 of this Count II, D'Ewart adopts and incorporates Paragraphs 1 thru 32 of this Complaint as though fully set forth herein.

34.     SEDIVER is a "Principal" as defined by Section 49.48.150(2) of the Revised Code of Washington (the "RCW"), in that SEDIVER is engaged in the business of manufacturing, producing, importing, or distributing products for sale to customers who purchase the product for resale; contracts with independent sales representatives to solicit orders for its products; and compensates independent sales representatives, in whole or in part, by commission. RCW § 49.48.150(2).

35.     D'EWART is a "Sales Representative" as defined by Section 49.48.150(3) of the RCW in that SEDIVER contracted with D'Ewart for the purpose of soliciting orders on its behalf for the purchase at whole sale of its products. RCW § 49.48.150(3).

36.     Section 49.48.160 of the RCW provides, in pertinent part, that

> [u]pon termination of a contract, whether or not the agreement is in writing, all earned commissions due to the sales representative shall be paid within thirty days after receipt of payment by the principal for products or goods sold on behalf of the principal by the sales representative, including earned commissions not due when the contract is terminated.

COMPLAINT
(No. Case No.:) –7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

157065389.2

1    RCW § 49.48.160(3)(b).

2        37.    Section 49.48.160(3)(c) of the RCW provides that "[w]here a sales

3    representative's efforts prior to termination of a contract results in a sale, regardless of when the

4    sale occurs, the termination may not affect whether a commission is considered earned." RCW §

5    49.48.160(3)(c).

6        38.    Section 49.48.160(4) of the RCW provides that "[f]ailure to pay an earned

7    commission is a wage payment violation under RCW 49.52.050." RCW § 49.48.160(4).

8        39.    D'EWART successfully generated significant sales for SEDIVER by promoting

9    sales of its products, and D'EWART's pre-termination efforts to solicit sales for SEDIVER's

10   products have generated and will continue to generate post-termination orders and sales, for

11   which D'EWART has not been paid commissions.

12       40.    Accordingly, under the Agreement and the RCW, D'EWART is entitled to

13   commissions at its full contracted rate for all sales resulting from D'EWART's efforts, regardless

14   of when the sale occurred.

15       41.    Section 49.52.050(2) of the RCW makes it unlawful for an employer to, willfully

16   and with intent to deprive an employee of any part of his or her wages, pay any employee a

17   lower wage than the wage such employer is obligated to pay such employee by any statute,

18   ordinance, or contract.  RCW § 49.52.050(2).

19       42.    Section 49.52.070 of the RCW provides that if an employer violates Section

20   49.52.050(2), the employer shall be liable in a civil action by the aggrieved employee for

21   judgment for twice the amount of the wages unlawfully rebated or withheld by way of exemplary

22   damages, together with costs of suit and a reasonable sum for attorney's fees. RCW § 49.52.070.

COMPLAINT
(No. Case No.:) –8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

157065389.2

43.    SEDIVER violated the foregoing provisions of the RCW by failing to pay earned commissions and underpaying earned commissions to D'EWART which it was obligated to pay under the Agreement and the RCW, and SEDIVER's failure to pay such commissions was willful and with the intent to deprive D'EWART of its earned commissions.

44.    Accordingly, D'EWART is entitled to payment of all commissions due and owing under the Agreement, as well as exemplary damages under the RCW equal to twice the amount of unpaid commissions, and reasonable attorneys' fees and costs. RCW § 49.52.070.

45.    Section 49.48.190(2) of the RCW provides that the statutory protection afforded independent sales representatives under the RCW, including RCW 49.48.150 through 49.48.190, "may not be waived, whether by express waiver or by attempt to make a contract or agreement subject to the laws of another state" and that "[a] waiver of a provision of RCW 49.48.150 through 49.48.190 is void." RCW § 49.48.190(2). Further, 49.48.180 of the RCW provides that "a principal who is not a resident of this state and who enters into a contract subject to RCW 49.48.150 through 49.48.190 is considered to be doing business in this state for purposes of the exercise of personal jurisdiction over the principal. As such, the Arkansas choice-of-law and venue provisions in the Agreement are thereby rendered void and unenforceable.

WHEREFORE, Plaintiff, D'EWART REPRESENTATIVES, L.L.C., respectfully requests the entry of judgment in its favor and against Defendant SEDIVER USA, Inc. and award Plaintiff all commissions due in accordance with the Agreement and the RCW and exemplary damages equal to two times the amount of unpaid commissions owed, in an amount in excess of $75,000.00, plus its reasonable attorneys' fees, costs and expenses, and such other and further relief as the Court deems just and equitable.

COMPLAINT
(No. Case No.:) –9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

157065389.2

1

## JURY DEMAND

2      Plaintiff D'Ewart Representatives, L.L.C. hereby demands a trial by jury on all causes of

3  action and issues so triable.

4

Dated: June 9, 2022

5                                    By: s/ James F. Williams
                                         James F. Williams, Bar No. 23613

6                                    By: s/ Hannah E.M. Parman
                                         Hannah E.M. Parman, Bar No. 58897

7

8                                    **Perkins Coie LLP**
                                     1201 Third Avenue, Suite 4900
                                     Seattle, Washington 98101-3099
9                                    Telephone: +1.206.359.8000
                                     Facsimile: +1.206.359.9000
10                                   JWilliams@perkinscoie.com
                                     HParman@perkinscoie.com

11

12                                   Daniel E. Beederman, *Pro Hac Vice forthcoming*
                                     Matthew P. Tyrrell, *Pro Hac Vice forthcoming*
13                                   SCHOENBERG FINKEL BEEDERMAN BELL GLAZER
                                     LLC
14                                   300 S. Wacker Dr., Ste. 1500
                                     Chicago, IL 60606
15                                   (312) 648-2300 – telephone
                                     (312) 648-1212 – facsimile
16                                   daniel.beederman@sfbbg.com
                                     matthew.tyrrell@sfbbg.com
17

18                                   Attorneys for Plaintiff D'Ewart Representatives,
                                     L.L.C.

19

20

21

22

23

24

25

26

COMPLAINT
(No. Case No.:) –10

157065389.2

# Exhibit A

**SEDIVER**

# AGENCY AGREEMENT

This Sales Agency Agreement ("**Agreement**") is made and entered into by and between **SEDIVER USA, Inc.**, duly organized and existing under the laws of Delaware, having its principal place of business at One Sediver Way, West Memphis, AR 72301, represented by Ron Duckstein, its Sales Director USA,

> (Hereinafter designated as the "**Company**" or "**SEDIVER USA**"),

and

**D'Ewart Representatives** duly organized and existing under the laws of Washington, whose address is PO Box 866, Bothell, WA 98041, represented by Pete D'Ewart and Doug D'Ewart,

> (Hereinafter designated as the "**Representative**").

Capitalized terms not otherwise defined herein shall have the meaning given to such terms in the Agreement.

## RECITALS

WHEREAS, SEDIVER USA manufactures and sells various kinds of toughened, glass and other insulators for use on overhead transmission and distribution lines;

WHEREAS, SEDIVER USA desires to appoint a regional representative for the purpose of:

Promoting and marketing SEDIVER toughened glass insulators sold by SEDIVER USA;

The activities and work of the Representative are as per Article 1, Relationship.

WHEREAS, the Representative is desirous of accepting such an appointment on the terms and conditions herein set forth.

WHEREAS the Representative has been approved by the Company's Business Partner Manager and will cooperate in any future integrity reviews, to be carried out every three years.

NOW THEREFORE, in consideration of the mutual covenants herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties, intending to be legally bound agree as follows:

Sediver USA, Inc.
One Sediver Way, West Memphis AR 72301 - USA
T +1 514 739 3385 | F +1 514 739 3669

**SEDIVER**

## 1. **RELATIONSHIP**

1.1    The Company hereby appoints Representative with respect to the territory referenced in **Section 3** and itemized in **Schedule "A"** (hereinafter, the "**Territory**") and/or the specific accounts set forth in **Schedule "A"** (hereinafter, the "**Accounts**") as its exclusive selling representative of the products hereinafter referenced in Section 4 and itemized in **Schedule "B"** (hereinafter, the "**Products**"), and Representative hereby accepts said appointment within the Territory and/or with respect to the Accounts.  Notwithstanding anything in this Agreement to the contrary, Company may, in its sole and unrestricted discretion and without any liability or obligation to Representative, appoint itself to make direct or indirect sales or distributions of any product or service, similar or dissimilar to those Representative markets, in the Territory and elsewhere, anytime, and to anyone, including, without limitation, to those customers identified in **Schedule "C"** (hereinafter, "**House Accounts**").  Company and Representative agree that the House Accounts identified in **Schedule "C"** may change and Representative further agrees that Representative shall immediately acknowledge and execute any revisions to **Schedule "C"** upon Company's request without any liability or obligation to Representative.

1.2    It is understood and expressly agreed that the relationship of employer and employee does not exist between Company and Representative.  Representative is and shall be an independent contractor working under Representative's own supervision, subject to the Territory herein prescribed. Company has historically depended on product quality and superiority, combined with outstanding support capability, to market its products throughout the world. Company believes that it can continue to grow and to prosper without succumbing to legally questionable or unethical demands or practices. Representative must conduct its business in an ethical manner and the requirement that all business shall be transacted in conformity with the SEDIVER's Code of Conduct insofar as the Code of Conduct applies to independent contractors, current price, discount and sales condition sheets, and the Company's general sales policies relating to independent contractors.

1.3    Representative shall have no authority to act as agent or representative of the Company except as specifically provided herein.  Representative shall not represent to third parties that Representative is an employee, partner, or joint venture of the Company.  Representative agrees that Representative shall neither contract for nor undertake any obligation in the name of or on account of the Company, nor accept payment from any person for any obligation due to the Company, nor make any recommendation, warranty, or guaranty with respect to the goods manufactured and sold by the Company, except as may be authorized in writing by the Company.

1.4.1  Representative shall indemnify, release, reimburse, and hold the Company harmless for any losses, demands, claims, lawsuits, causes of action, damages, obligations, liabilities, injuries, costs, and expenses (including but not limited to court costs and attorneys' fees) paid, incurred, suffered by, or asserted against Company relating in any way to illegal, reckless, negligent, or intentional acts committed by Representative (or any of Representative's agents or representatives) (a) for any unauthorized agreements, warranties, or representations contracted for or undertaken without the Company's express advance written authorization; or (b) related in any manner to Representative's provision of services under this Agreement.

SEDIVER

1.4.2 Subject to Representative's obligations contained in sub-articles 1.3 and 1.4, Company shall indemnify and hold Representative and its employees and officers harmless with regards to any and all products sold by Company to customers and from liability and claims of any kind for loss or damage to property of customer or any other person, or for any injury to or death of any person, arising out of Company and customer's use, maintenance and installment of the equipment, or any work, activity or other things allowed or suffered by customer or Company to be done in, on or about the equipment. Company shall defend of its own cost Representative in any action or proceeding arising from any such claim and shall indemnify Representative against all costs, attorneys' fees, expert witness fees and any other expenses incurred in such action or proceeding. Representative shall not be liable for injury or damage which may be sustained by the person or property of customer or Company, its employees, customers, or any other person due to the use, installment or maintenance of the equipment, it being understood that Representative has no obligation or duty to perform any kind of delivery, set up of equipment, operation or maintenance of any kind, except as specially provided in this Agreement.

1.5    Orders procured by Representative shall not be legally binding upon the Company until the Company shall have given written approval of the orders to Representative.   All sales are conditioned upon such acceptance by the Company.

1.6    The Representative shall submit at least quarterly to the Company a written report in reasonable detail of the activities undertaken by the Representative within the scope of the terms and conditions of this Agreement according to guidelines and activity report template attached hereto in **Schedule "D"**.

## 2. **COMPLIANCE**

2.1.   Each party hereby undertakes and states that, at the date of the entering into force and throughout the course of this Agreement, itself, its directors, officers or employees have not offered, promised, given, authorized, solicited or accepted any undue pecuniary or other advantage or benefit of any kind (or implied that they will or might do any such thing at any time in the future) in any way connected with the Agreement and that it has taken reasonable measures to prevent employees or any other third parties, subject to its control or determining influence, from doing so.

2.2.   The Representative confirms that it is neither an official of any local or foreign government, department or agency thereof, nor a member of any political party or employee of any company which the Representative knows or has reasons to know is a customer of the Company. The Representative confirms it is not an employee of or consultant for any international or local organization, developing bank or any other organization that would prevent the Representative from entering into the Agreement, as per applicable anti-corruption laws. The Representative undertakes not to accept any political role during the term of this Agreement.

2.3.   The Parties agree that, at all times in connection with and throughout the course of the Agreement and thereafter, they will comply with and that their employees or other third parties, subject to their control or determining influence, will comply with the following provisions:

**SEDIVER**

2.3.1 The Parties undertake to comply with all applicable laws and regulations including but not limited to (i) the U.S. Foreign Corrupt Practices Act, as amended; (ii) the UK Bribery Act 2010; (iii) the French Criminal Law (including Article 435-3 and 445-1 of the Criminal Code); (iv) the PRC Criminal Law, the PRC Anti-Unfair Competition Law, the Interim Regulations of the PRC State Administration for Industry and Commerce on Prohibition of Commercial Bribery, and (v) any applicable anti-bribery law, anti-corruption law, anti-money laundering law, conflict of interest law, or any other applicable law, rule or regulation of similar purpose and effect, including the highest anticorruption standards, that are in force and are applicable in any jurisdiction (referred to as "Anti-Corruption Laws") as well as the basic values and rules set forth in the Code of Conduct, Anti-Trust Guideline and Anti-Corruption Guideline attached in **Schedule "E"** hereto.

2.3.2 The Parties will prohibit corruption/bribery and trust practices at all times and in any form, in relation with, including but not limited to, a public official at the international, national or local level, a political party, party official or candidate to political office, and a director, officer or employee of a public or private party, or with a customer of the Company or any of its representatives. Such prohibition applies whether these practices are engaged in directly or indirectly, including through third party bribery, which is defined as the offering, promising, giving, authorizing or accepting of any undue pecuniary or other advantage to, by or for any of the persons listed above or for anyone else in order to obtain or retain a business, improper advantage, or improper information, including but not limited to competitive information such as prices, whether orally or in writing, from any stakeholder involved in any given project. The aforementioned prohibition also concerns, but is not limited to, public or private procurement agreement awards, regulatory permits, taxation, customs, judicial, administrative and legislative proceedings. Bribery means in a non-exhaustive manner kicking back a portion of an agreement payment to government or party officials or to employees of the other party, their close relatives, friends or business partners or using intermediaries such as Representatives, consultants or other third parties, to channel payments to government or party officials, or to employees of the other party, their relatives, friends or business partners.

2.4 The Representative undertakes to report to the Company (i) any initiation of any investigation or proceedings against the Representative for any violation or alleged violation of anti-trust laws or Anti-Corruption laws and (ii) any events or incidents which indicate a violation of the applicable laws and regulations or a violation of the basic rules of the Code of Conduct, Anti-Trust Guideline or Anti-Corruption Guideline by the Representative, any of its employees or representative, or any other third party.

## 3. **COOPERATION**

SEDIVER

3.1   Company agrees to furnish Representative with sales cooperation by supplying catalogs, technical assistance, drawings, engineering information, and all other such literature, which the Company, in its sole discretion, may deem necessary to assist Representative in promoting sales of the Company's products.

3.2   The Company shall provide its samples at its discretion to Representative, transportation charges prepaid.  Representative agrees that all Company samples shall be the sole and exclusive property of Company and Representative shall take reasonable care of the samples and immediately return the samples to the Company upon written request.  Representative shall account and pay for any samples not timely returned to the Company upon Company's written request.  Representative agrees that, in order for Company to remain highly competitive, Company may designate certain samples as Confidential Information and therefore subject to **Section 9** below.  Upon Company's request, Representative agrees to immediately sign a separate agreement to hold such samples confidential in accordance with the terms of **Section 9**.

3.3   Representative agrees that any engineering information of a confidential nature furnished to Representative by the Company shall be deemed Confidential Information, kept confidential, not be divulged to anyone except upon the written permission of the Company, and otherwise subject to **Section 9** pertaining to Confidential Information, below.

3.4   Representative shall diligently promote the sale of the Products and shall use Representative's best efforts to promote good customer relations between the Company and any purchaser of the Company's Products.  Representative shall notify the Company immediately upon receipt of any information affecting, or likely to affect, the credit of any customer.  Company may from time to time issue performance thresholds, including but not limited to sales goals, for the purpose of measuring Representative's performance and defining future performance goals and strategies to promote the Company's Products.  Representative shall meet all performance thresholds, including those agreed to from time to time in writing by the parties.  Notwithstanding any other section of this Agreement (including without limitation **Section 10**) Company may unilaterally terminate this Agreement and have no further obligations under this Agreement if Company, in its sole discretion, determines that Representative has breached this **Section 3.4**.  Despite any revision of performance thresholds, the remaining terms of this Agreement will remain in full force and effect.  Representative acknowledges that the provisions of this paragraph are essential, fair, and reasonable.

3.5   Representative, in consideration of the exclusive appointment herein provided, shall not represent any person, firm, or corporation that manufactures merchandise or products competitive or in conflict with merchandise and/or products manufactured or sold by the Company, without prior written notification to and written approval from the Company, which approval Company may withhold in its sole discretion.  Should the Company determine that Representative represents such a person, firm, or corporation while this Agreement is in effect, the Company has the right to terminate this Agreement in the manner provided below.

SEDIVER

3.6   Representative shall keep the Company advised at all times of the names of all companies which Representative represents and the products of said companies which Representative is authorized to sell.  Nothing herein shall be construed as prohibiting Representative from handling other non-competitive products in the territory herein described during the life of this Agreement; nor shall the Agreement be construed as prohibiting the Company from selling to customers for delivery to and use in the territory, including without limitation those customers designated as House Accounts under **Section 1** and/or **Schedule "C"**.

## 4.  TERRITORY AND ACCOUNTS

The Territory and/or the specific Accounts allocated by the Company to Representative are itemized in the attached **Schedule "A,"** which is incorporated herein**.**

## 5.  PRODUCTS

The Products and apparatus manufactured or offered for sale by the Company, which are covered by this Agreement, are listed in the attached **Schedule "B,"** which is incorporated herein by this reference.

## 6.  COMMISSIONS

6.1   Representative shall receive commissions, as specified in **Schedule "A"**, on the products described in **Schedule "B"** sold by the Company to any customer—except those customers designated as House Accounts under **Section 1** and/or **Schedule "C"**—in the territory described in **Schedule "A"** or to the specific accounts designated in **Schedule "A,"** whether the order therefore be sent to the Company by the customer or by Representative.

6.2   Commissions will be paid only upon receipt of payment-in-full from the customer.  Except as otherwise provided, commissions will be paid on the net invoiced amount received by the Company after deducting any applicable taxes. If the Company fails to make delivery or to perform under any accepted orders, it shall not be responsible to Representative for any damages, expenses, commissions, or other consideration.

6.3   In the event of price adjustments granted to a customer, return of merchandise by a customer, or non-payment of invoices within thirty (30) days from invoice date, relating to any order on which commission has been credited or paid to Representative, the Company shall have the right to charge back the commissions credited or paid on any such order to Representative's account.  Where such charge-back results from non-payment of invoices, if the delinquent customer subsequently submits payment, the Company, in its sole discretion, may re-credit Representative's account with the amount charged back, less any collection expenses incurred by the Company.

6.4   Full and split commission rates will be paid as specified in **Schedule "A"**.

6.5   The Agent shall communicate to Company the relevant Representative bank account identification duly certified by the bank as being in the name of **D'Ewart Representatives**. The Agent shall



forthwith inform Company of any change regarding its bank account details and provide the appropriate updated bank supporting documentation.

6.6    The Representative represents and warrants that:

    (a)    the bank account to which payments shall be made by Company has been established and shall be operated in accordance with applicable laws,

    (b)    payments made by Company to such bank account will not constitute a breach of any currency regulation and currency control regulation,

    (c)    D'Ewart Representatives. is the sole beneficial owner of such bank account.

## 7.  CORRESPONDENCE

7.1    The Company shall furnish to Representative whenever deemed appropriate by the Company, copies of all correspondence relating to products or equipment covered by the Agreement with persons, firms, or corporations within the Territory and/or Accounts assigned to Representative.

7.2    Representative shall furnish copies of all quotations made in Representative's Territory relative to negotiations on the Products and equipment covered by this Agreement and, further, Representative shall furnish any other information that the Company may request regarding such negotiations.

## 8.  OFFICE

Representative may conduct or maintain an office, either at Representative's place of residence or elsewhere, but all office expense, if any, shall be borne exclusively by Representative, and the Company shall in no way be liable for such expenses.

## 9.  CONFIDENTIAL INFORMATION.

9.1    Representative acknowledges that, while Representative is in no manner an employee by the Company, Company is engaged in a highly competitive business and, further, Representative's contractual relationship with Company gives Representative access to Confidential Information, as defined below, relating to Company's business and its customers which must remain strictly confidential.  Representative acknowledges the Company's Confidential Information is valuable, special, and a unique asset of the Company's business and that it has been and will be developed by Company at considerable effort and expense and, further, that Company's successful operation and the conduct of its business requires that its Confidential Information, as defined below, remain strictly confidential.

9.2    Representative further acknowledges that: (a) such Confidential Information derives independent economic value (actual or potential) from not being generally known to and not being readily ascertainable using proper means by other persons or entities who can obtain economic value from its disclosure or use, (b) is the subject of efforts that are reasonable under circumstances to maintain

SEDIVER

its secrecy, and (c) if it were to be known and used by others engaged in a competitive business, it would be harmful and detrimental to the interests of Company.

9.3    In consideration of the foregoing and this Agreement, Representative hereby agrees and covenants that Representative shall keep secret and confidential all Confidential Information and will not, directly or indirectly in one or a series of transactions, disclose to any person or entity, or use or otherwise exploit for Representative's own benefit or for the benefit of any person or entity other than Company, Confidential Information, whether prepared by Representative or not; provided, however, that any Confidential Information may be disclosed to representatives, employees and agents of Company who need to know such Confidential Information in order to perform the services or conduct the operations required or expected of them in their performance of services on behalf of Company and its affiliates.

9.4    Representative shall inform all authorized persons to whom Confidential Information is disclosed by Representative of the confidential nature of such information, shall require all such persons to execute a written agreement under which such persons shall agree to be bound by the provisions of this **Section 9**.  Further, Representative shall use Representative's best efforts and the utmost good faith to cause all persons to whom any Confidential Information shall be disclosed by Representative hereunder, to observe the terms and conditions set forth herein as though each such person or entity were bound hereby.

9.5    Representative shall have an obligation hereunder to keep confidential any Confidential Information if and to the extent disclosure is specifically required by law; provided, however, that in the event disclosure is required by applicable law, Representative shall provide Company with prompt advance notice of such requirement, prior to making any disclosure, so that Company may seek an appropriate protective order.

9.6    Representative acknowledges and agrees that:  (a) the covenants set forth in this section of the Agreement are reasonable and necessary for the protection of Company's legitimate business interests; (b) irreparable injury will result to Company if Representative breaches any of the terms of this Agreement; and (c) monetary damages may not be an adequate remedy to Company for any breach or threatened breach of this Agreement.

9.7    Representative agrees that in addition to all other remedies available to Company at law or in equity, Company shall be entitled to injunctive relief to enjoin any actual, continued, or threatened breach of this Agreement by Representative without the necessity of posting bond therefore.  In the event Company takes legal action to enforce any of the terms or provisions of this Agreement against Representative, and in the event that Company is the prevailing party in any litigation to enforce its rights or any of the terms or provisions of this Agreement, Representative shall pay the Company's costs and expenses, including but not limited to, attorneys' fees, up through and including any appeal.  In the event Representative takes legal action to enforce any of the terms or provisions of this Agreement against Company, and in the event that Company is the prevailing party in such litigation, Representative shall pay Company's costs and expenses, including but not limited to, attorneys' fees, up through and including any appeal.

SΞDIVΞR

9.8    All Confidential Information, shall be and remain Company's sole property and, immediately upon termination of this Agreement or earlier request of the Company, Representative shall immediately, but not later than two (2) business days after the earlier of termination or Company's request, surrender such property to the Company.  Further, following termination of this Agreement or earlier request of the Company, Representative shall not retain any Confidential Information, including photocopies, electronic copies, or any copies of Confidential Information whatsoever, and shall certify same in writing to Company not later than two (2) business days after termination of this Agreement or earlier request of Company.

9.9    "Confidential Information" means any confidential information including, without limitation, any and all documentation that Company treats as confidential, Company's trade secrets (as defined in the Uniform Trade Secrets Act), manufacturing processes, formulae, manufacturing information and documentation, technical and engineering information and documentation, customer identities, lists, and contact information (whether or not produced or serviced by Representative), personally identifiable customer information, product designs, pricing policies and price lists, sales techniques, confidential information relating to suppliers, information relating to Company's operational methods, research data, marketing plans or strategies, products and formulae, business plans, business acquisition plans, strategies, forecasts, budgets, projections, marketing plans, ideas, discoveries, computer programs (including source and object codes), business processes, procedures, research or technical data, patents, copyrights, and all other improvements or other proprietary or intellectual property of Company, whether or not in written or tangible form, and whether or not registered, and including all files, records, manuals, books, catalogues, memoranda, notes, summaries, plans, reports, records, documents and other evidence thereof relating to Company and/or its customers.  The term Confidential Information does not include information that is or becomes generally available to the public other than as a result of a disclosure by Representative not permissible hereunder.

9.10    This **Section 9** shall survive termination of the Agreement.

## 10.  <u>DATE, TERM, TERMINATION, ASSIGNMENT, MISCELLANEOUS</u>

10.1    This Agreement shall be effective for **one (1) year** from the date hereof, subject to termination as set forth below, and from year to year thereafter until terminated by either party.  Either party may terminate this Agreement at any time without further obligation, except as expressly set forth below, upon providing the other party not less than thirty (30) days advance written notice of their intention to cancel this Agreement (the "**Notice of Termination**").  The Notice of Termination shall be deemed to have been served on either party if the Notice of Termination is sent by registered mail to the address stated at the opening of this Agreement or, if changed, to such address as shall have been previously communicated to the other party. Moreover, this Agreement may be terminated:

SEDIVER

a) Immediately by either party in the event of any material breach of any of the covenants contained therein, provided that such breach is not cured within thirty (30) days from the date of written notice thereof by the non-breaching party.

b) Immediately by the Company if it appears that the information provided by the Representative has not been true in any material respect or the Representative has violated any material laws and regulations including, but not limited to, any of aforementioned anti-trust laws and/or anti-corruption laws or the basic values or rules set forth in the attached Code of Conduct, Anti-Trust Guideline or Anti-Corruption Guideline attached in **Schedule "E"** hereto.

c) If the approval referred to in the preamble of the Agreement is revoked or not renewed by Company.

10.2 The rights of the parties hereto shall be fully protected and remain in full force until the expiration date stipulated in said Notice of Termination.

10.3 Termination of this Agreement shall not be deemed to affect the rights or liabilities of either party as a result of obligations undertaken herein. Upon termination of this Agreement, Representative must not represent, directly or indirectly, that Representative is a representative for or is otherwise affiliated with Company in any way. Upon termination of this Agreement, Company shall have no further obligations under this Agreement other than compensating Representative the full agreed commission for shipments as they are made against unfilled orders or unexpired, firm commitments which have been accepted by the Company, for a period not to exceed thirty (30) days or the expiration date of the commitment, whichever shall occur first.

10.4 This Agreement, including the Schedules attached hereto, constitutes the entire agreement between the parties hereto and supersedes all previous agreements, either written or verbal.

10.5 This Agreement shall not be assignable or transferable by Representative without the advance written consent of the Company. The Company may freely assign this Agreement and all of its rights and obligations hereunder, without approval from Representative, to any successor of Company, by sale, merger, or otherwise, of all or substantially all of the assets or business of Company.

10.6 The laws of the State of Arkansas shall govern the construction of this Agreement and all rights and duties of the parties under this Agreement. The parties expressly agree that the laws of the State of Arkansas shall govern this Agreement and any disputes arising hereunder. The parties further agree that jurisdiction and venue in the courts governing Arkansas shall be appropriate for any and all matters and disputes arising hereunder and hereby waive any objection to same.

## 11. <u>NOTICES</u>

Any notice, approval, consent, waiver or other communications required or permitted to be given or to be served upon any person in connection with this Agreement shall be given or served in writing. Such notice shall be personally delivered, sent by facsimile transmission, reputable overnight courier, or sent

SEDIVER

by prepaid registered or certified mail with return receipt requested and shall be deemed given (i) if personally given or by facsimile transmission, upon delivery with receipt verified or documented proof of delivery, (ii) if by reputable overnight courier, the next business day, or (iv) if given by mail three (3) days following the deposit in the mail as described above. Such notices shall be addressed to the Party to whom such notice is being given at the Parties address set forth below or as the Parties shall otherwise direct by giving notice in accordance with the provisions of this section.

If to **D'Ewart Representatives**
Mr. Pete D'Ewart & Doug D'Ewart
Title: President
Address: PO Box 866, Bothell, WA 98041
E-mail address: pete@dewart.com, doug@dewart.com

 If to **SEDIVER USA:** Mr. Ron Duckstein.
Title: Sales Director, USA
Address: One Sediver Way, West Memphis, AR 72301 - USA
E-mail address: Ron.Duckstein@sediver.com

## 12. <u>FORCE MAJEURE</u>

12.1    Performance of this Agreement shall be suspended in case of Force Majeure (as defined below), <u>provided</u>, however, that the party seeking to be excused from performance on the grounds of Force Majeure shall give to the other party as soon as practicable notice specifying the nature of the Force Majeure and the anticipated duration thereof. Such party shall make every reasonable effort to minimize or eliminate the hindrance or the condition created by Force Majeure and which prevents the performance of its obligations. For the purpose of this Agreement, Force Majeure shall include, without limitation, acts of God, war, riot or strikes affecting the Company's production facilities or the transportation of the Products.

12.2    In the event that this Agreement is suspended for Force Majeure for a period exceeding six months, the Company may automatically terminate the Agreement upon 30 days prior notice.

## 13. <u>AUDIT</u>

The Company shall have the right to conduct at regular intervals (or have conducted by an external auditor or service provider) an audit of the Representative with respect to potential non-compliance issues relating to Anti-Corruption Laws, non-compliance of Company's Code of Conduct, Anti-Trust Guidelines or questionable business ethical behavior of the Representative.

## 14. <u>WARRANTIES</u>



The Representative warrants that the services provided hereunder will be performed in a professional and workmanlike manner using reasonable care and skill in conformity with this Agreement and the highest standards in the industry. The Representative represents and warrants that it has no current commitments or obligations, either express or implied, that will conflict with or otherwise interfere with or impede the performance of the services. The Representative also represents and warrants that the services will not infringe or violate the copyright or other intellectual property right of any third party. The Representative further represents and warrants that it is not the subject of any investigations whatsoever and has not been convicted of any felony or other crime. The Representative further represents and warrants that it has all necessary licenses, permits and/or other authorizations, if any, required to perform the services under this Agreement.

IN WITNESS THEREOF, the parties hereto have executed this Agreement in duplicate as of Thursday, August 8th, 2019.

**REPRESENTATIVE:**                    **SEDIVER USA**

Sign: _Peter D'Ewart_                  By:_____

Print:  Pete D'Ewart                   Print: Ron Duckstein

Title:  President                      Title: Sales Director, USA

Date: _09 /02 /2020_                   Date:_____



## SCHEDULE A

### Territory, Accounts and Commissions

**A.1    TERRITORY:**

**The States of Alaska, Idaho, Oregon, Washington, Utah, and Wyoming, with exception to the Wyoming counties of: Albany, Laramie, Goshen, Platte, Carbon, Converse & Niobrara, and Natrona.**

**TERRITORY EXCEPTIONS:**

**Excludes Western Area Power (WAPA) business in the state of Wyoming.**

The above shall constitute the territory covered by this Sales Agreement.  With the exception of those customers designated as House Accounts under **Section 1** of the Agreement and/or **Schedule "C"** of the Agreement, the Representative shall have exclusive rights to business selling the products identified **Schedule "B"** from privately owned electrical utilities, publicly owned electrical utilities, Rural Electric Co-Operatives, municipal electric utilities, electrical apparatus repair shops, and electrical distributors regularly selling this class of user.

SEDIVER

## A.2    ACCOUNTS

<u>Representative:</u> USASOTX

<u>Electric Utilities</u>

<u>Distributors</u>

<u>Packagers</u>

<u>EPC Firms</u>

<u>Contractors</u>

<u>Consultants</u>



## A3. COMMISSIONS:

**A.3.1** **Full Commission**.

    A.3.1.1    The Company will pay the Representative a commission of:

- 4.5% on all SEDIVER products

        The commission is applicable to the identified products in **Schedule "B"** sold directly by Representative within the Territory, except for sales to those customers designated as House Accounts under **Section 1** and/or **Schedule "C"**.

        **EXCEPTIONS: N/A**

    A.3.1.2    Unless otherwise negotiated in advance, for single project sales greater than $1,000,000 and annual blanket contract sales greater than $2,500,000, commission rates will be 3.5%.

    A.3.1.3    The Commission identified in **Section A.3.1.1** will be paid in accordance with **Section 6.2** of the Agreement. The Company reserves the right to provide incentive commissions which will be provided in supplements to the Agreement. By mutual written consent, all commission rates may be adjusted to meet competitive situations.

**A.3.2** **Split Commission**.

    A.3.2.1    On all inter-territorial sales within the United States of America, whether said sales be made directly to the customer or through intermediaries, the full commission provided in **Section A.3.1** shall be allocated to the several territories in this proportion:

        **a.  40% of the full commission to the territory where the specification is written, provided that if technical approval is required, the commission identified in this paragraph will be split 50/50 between the territory where the specification is written and the person writing the technical approval.**

        **b.  40% of the full commission to the territory where the order originates, provided that, in the case of blankets and releases, the commission identified in this paragraph will be split 50/50 between the territory where the order originates and the person executing the blankets and releases.**

        **c.  20% of the full commission to the territory in which the product is installed.**

SEDIVER

A.3.2.2    The allocation of commission under **Section A.3.2.1** will be applied regardless of whether the involved territories have been assigned to a sales representative.

A.3.2.3    On sales involving insulators specifications written by a recognized consulting engineer, commission will be paid to Representative according to the principle of split commissions described in **Section A.3.2.1** and the principle of remuneration detailed in **Section A.3.3** when the following conditions are met: (a) active, regular contact is made by Representative with consultant's project for which insulators are ordered; (b) written information on insulator Technical specification, quantity requirements, inquiry date and (c) required delivery date is provided to Principal by Representative.

A.3.2.4    On sales into the territory made by packagers outside the territory commission shall be paid according to the principle of split commissions described in **Section A.3.2.1**.

A.3.2.5    On sales to EPC Firms, Transcos and Contractors, commission will be paid according to split commissions described in **Section A.3.2.1** and the principle of remuneration detailed in **Section A.3.3** when the following conditions are met: (a) The account is specifically identified in **Section A2** (b) Sediver requests the involvement of Representative in writing (c) traceable, active, regular contact is made by the Representative with the account regarding the project for which insulators are ordered and (d) specific project correspondence between the Representative and the account has been regularly shared with the Company. Otherwise no commission will be paid.

**A.3.3    <u>Principle of Remuneration</u>**

A.3.3.1    In case of disagreement on the commission rate applicable to specific and complex situations, split commissions shall be based on the principles of remuneration for work done (value added). This will be determined by negotiation and mutual agreement between the Company and the Representative. In case of disagreement, the Company's assessment of the principles of remuneration for work done shall prevail.

SEDIVER

**A.4    DISPUTES**

A.4.1    Representative shall provide Company written notice of any dispute regarding the calculation of commissions (the "Notice of Dispute"). The Notice of Dispute must be received by Company within 6 months after the date of the sale upon which the disputed commission was calculated. Within a reasonable amount of time after its receipt of a properly and timely submitted Notice of Dispute, Company shall determine what, if any, changes to the calculation should be made and provide notice to all affected parties. Company's resolution of any disputes under this **Section A.4.1** shall be final and binding on all affected parties.

A.4.2    If, as a result of Company's recalculation of commission under **Section A.4.1** of this Agreement or any provision of any agreement Company may have with representatives of other territories, Company determines that Representative received commissions in excess of what Representative is otherwise entitled to, Representative agrees to immediately repay those excess commissions to Company upon written request from Company.



### <u>SCHEDULE B</u>

### Products

Products identified by the Company as:

SEDIVER toughened Glass Insulators
And as described in Sediver's product catalogs



## SCHEDULE C

**House accounts**

N/A



<u>**SCHEDULE D**</u>

**Activity Report Template**

**Report N° XX**
**(See following page)**



## SEDIVER – USA AGENTS QUARTERLY ACTIVITY REPORT

| Agency Name | |
|---|---|
| Contact Name/Title | (Name and Title of the person who prepared report) |
| Territories | (For agencies with multiple territories, please use one form for each territory, as required) |
| Date of Report | |
| Reporting Period | |

| CUSTOMER UPDATES | MEETINGS / COMMUNICATIONS, ENGINEERING & STANDARDS, PROCUREMENT, MAINTENANCE |
|---|---|
| Customer A | |
| Customer B | |
| Customer C | |
| Customer D | |
| Customer E | |
| Customer F | |
| Customer G | |
| **PROJECT UPDATES** | **POTENTIAL PROJECTS (NEW OR MAINTENANCE), ACTIVE PROJECTS** |
| Project A | |
| Project B | |
| Project C | |
| **MARKET INTELLIGENCE** | **ANY PUBLICLY AVAILABLE INFORMATION REGARDING MARKET ACTIVITY** |
| | |
| **PERFORMANCE / ACTIVITIES / NEW BUSINESS** | |
| Customer Service Quality | |
| Customer PO Delivery Performance | |
| West Memphis Factory/Lab Visits | |
| Technical Support Activities | |
| Other | |

*Please provide a thorough description of the most significant tasks you have accomplished during the respective period in performance of the Agreement.*



<u>**SCHEDULE E**</u>

**Compliance Guidelines**

- E1. The Code of Conduct

- E2. The Anti-Corruption Guideline

- E3. The Antitrust Guideline







# Exhibit B



January 28, 2022


D'Ewart Representatives LLC
9227 NE 180th Street
Bothell, WA 98011

Attention:  Doug D'Ewart

By registered letter with acknowledgement of receipt and e-mail

**RE:  Notice of Termination of the Sales Agency Agreement dated August 8th, 2019**

Dear Mr. D'Ewart,

We hereby provide notice of termination of the Sales Agency Agreement entered into between Sediver USA, Inc. and D'Ewart Representatives LLC (the "Agreement") effective August 8th, 2019.  Pursuant to Section 10.1 of the Agreement which provides one party the right to terminate the Agreement upon providing the other party not less than thirty (30) days advance written notice, the effective termination date of the Agreement shall be <u>February 28th, 2022</u>.

Outstanding commissions due in relation to previous and/or current projects will be paid in accordance with the Agreement terms where proof of services can be demonstrated.  In particular, with regards to commissions related to the ongoing EPC contracted Gateway-South project, D'Ewart Representatives LLC shall be entitled to receive a commission equal to one (1) percent of the customer net purchase order value upon completion of the supply and payment-in-full received by Sediver USA, Inc. from the customer.

We wish you well and thank you for your efforts.


Respectfully submitted,

Ron Duckstein
Sales Director
Sediver USA, Inc.


Cc:  Craig Espinosa, Carolina Lungo

**Sediver USA, Inc.**
One Sediver Way, West Memphis AR 72301
T 870-394-7495 | F 870-733-0559